UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JEAN HOPKINS,

       Plaintiff,

v.

HOPKINS ENVIRONMENTAL GROUP, INC.,
RICK EDWARDS, JAMES TRUSKEY, TIM
WESTON, SHOP MANAGER MARK and
GERRY WHITE,

       Defendants.

Case # 16-CV-841-FPG

DECISION AND ORDER

## INTRODUCTION

Plaintiff Jean Hopkins ("Plaintiff") brings this action to remedy alleged discrimination by her former employer Hazmat Environmental Group, Inc. ("Hazmat") and several Hazmat employees (collectively, "Defendants"). ECF No. 1. In her complaint, Plaintiff asserts eleven causes of action and seeks relief under both federal and state law. *Id.*

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendants now move to dismiss Plaintiff's tenth and eleventh causes of action—for intentional infliction of emotional distress and fraudulent inducement, respectively. ECF No. 11.

Defendants' motion is granted in part and denied in part. With respect to Plaintiff's tenth cause of action, Defendants' motion is granted because Plaintiff concedes that her intentional infliction of emotional distress claim is barred by the applicable statute of limitations. *See* ECF No. 13, at n.1. With respect to Plaintiff's eleventh cause of action, Defendants' motion is denied because Plaintiff has adequately stated a claim for fraudulent inducement under New York common law.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides that a party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In reviewing a motion to dismiss under Rule 12(b)(6), the court "must accept as true all of the factual allegations contained in the complaint," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 572 (2007), and "draw all reasonable inferences in Plaintiff's favor." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly,* 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

## DISCUSSION

To state a claim for fraudulent inducement under New York common law, a plaintiff must plausibly allege that (1) the defendant made a material misrepresentation; (2) the defendant knew the representation was false; (3) the defendant intended plaintiff to rely on it; (4) plaintiff did reasonably rely on the defendant's misrepresentation; and (5) plaintiff was injured as a result. *Braddock v. Braddock*, 871 N.Y.S.2d 68, 70 (1st Dep't 2009) (citing *Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 348 (1999)); *Amida Capital Mgmt. II, LLC v. Cerberus Capital Mgmt., L.P.*, 669 F. Supp. 2d 430, 444 (S.D.N.Y. 2009).

Further, to comply with the heightened requirements for fraud claims under Fed. R. Civ. P. 9(b), a complaint must "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why

the statements were fraudulent." *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290 (2d Cir. 2006) (quoting *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993)).

## I. Relevant Allegations in Plaintiff's Complaint

Hazmat, a corporation headquartered in Buffalo, New York, is in the business of transporting hazardous and nonhazardous waste. *Id.* ¶ 5. Depending on the length of a driver's trip, Hazmat pays its drivers either by the hour or by mileage. *Id.* ¶ 20. If a trip is over 100 miles, it is considered a "mileage run" and the driver is paid $0.49 per mile plus $35 for loading and $35 for unloading. *Id.* ¶ 21. If a trip is less than 100 miles, Hazmat pays the driver $17.25 per hour with no loading or unloading payment. *Id.*¶ 22.[1]

In December 2011, Plaintiff applied for employment with Hazmat. *Id.* ¶ 13. At the time, Plaintiff was self-employed as a truck driver but was seeking a higher salary without the financial risks of self-employment. *Id.* ¶¶ 12-13. Plaintiff is female, transgender, and older than almost all of the other truck drivers working for Hazmat in Buffalo. *Id.* ¶¶ 7-9, 25.

Plaintiff interviewed with Defendant Tim Weston, one of Hazmat's Operations Managers. *Id.* ¶ 14. Weston falsely told Plaintiff that she was interviewing for a dedicated "mileage run" assignment from the Buffalo area to Ashtabula, Ohio. *Id.* ¶¶ 14, 198. Weston also told Plaintiff that Hazmat had a contract for the Ashtabula run that required six drivers and that Hazmat would pay her $0.49 per mile for 135 miles plus $35 load pay and $35 unload pay, for at least five to six days per week. *Id.* ¶ 15.

Plaintiff alleges that Weston knew the representation he made during her interview—namely, that Plaintiff was being hired to do the Ashtabula run—was false, and that he made that false representation in order to convince Plaintiff to accept the job. *Id.* ¶¶ 199, 201. Specifically,

---

[1]  On June 29, 2013, Hazmat increased the mileage and hourly payments to $0.50 per mile and $19.25 per hour. *Id.* ¶ 72.

3

Plaintiff alleges that Hazmat attracted and retained drivers by promising them lucrative mileage runs such as the Ashtabula run. *Id.* ¶ 200. Of course, not every Hazmat driver can be assigned to those runs. Plaintiff alleges that her status as an older, female, transgender person meant (in Weston's mind) that he could entice her to drive for Hazmat with the promise of lucrative job assignments without actually having to follow through. *Id.* ¶ 200-201.

In January 2012, Plaintiff accepted employment with Hazmat, and terminated her existing business, "in reliance on Defendant Weston's representations and assurance that she would be assigned the Ashtabula run, and would be earning $1000 to $1200[2] per week." *Id.* ¶¶ 18-19, 202.

However, when Plaintiff arrived at Hazmat and completed her training, she was not assigned to do the Ashtabula run. *Id.* ¶ 32. Instead, Plaintiff was almost exclusively assigned to the Hamilton steel mill run. *Id.* ¶¶ 34, 38. The Hamilton steel mill run is less desirable than the Ashtabula run because it involves very dirty work and is only paid by the hour. *Id.* ¶¶ 29, 35.

Throughout her employment at Hazmat, Plaintiff was occasionally assigned the Ashtabula run or another mileage run but most often was assigned runs that were dirtier, more physically demanding, and less lucrative. Plaintiff alleges that she was given a greatly disproportionate share of undesirable assignments (and subjected to other forms of mistreatment, which are not directly relevant at this juncture) because of her female gender, her age, and her transgender status. *Id.* ¶ 47. From 2012 to 2014, Plaintiff's salary decreased even as Hazmat drivers received a $2 per hour pay raise. *Id.* ¶ 73.[3] When she complained about her assignments, Hazmat dispatcher James Truskey told her "that he was assigning the more desirable and better-paying jobs to cis-gender

---

[2] It is unclear how Plaintiff arrived at these numbers. Given that Hazmat pays $0.49 per mile plus $35 load pay and $35 unload pay for mileage runs, a 135-mile trip from Buffalo to Ashtabula would pay $136.15. That would mean Plaintiff could earn $680.75 per week if she did the Ashtabula run five times, and $816.90 per week if she did the Ashtabula run six times. Nevertheless, the precise pay calculation for the Ashtabula run is less relevant at this stage of the litigation than the fact that Plaintiff was told she was being hired to do the Ashtabula run and the fact that the Ashtabula run is a lucrative and desirable assignment.

[3] Plaintiff earned $42,137 in 2012, $39,742 in 2013, and $35,600 in 2014. *Id.* Meanwhile, due to their favorable assignments, younger and cis-male drivers typically earned $50,000 to $70,000 annually. *Id.* ¶ 78.

male drivers, younger drivers, and drivers with less seniority than Plaintiff[] because he did not want the men to quit." *Id.* ¶ 71.

On April 13, 2015, Hazmat's Human Resources Manager sent Plaintiff a letter announcing Plaintiff's "separation" from the company, effective the next day, even though Plaintiff had not resigned. *Id.* ¶ 142.

## II. Defendants' Motion to Dismiss

Defendants argue that Plaintiff fails to state a claim for fraudulent inducement for two reasons. First, Defendants argue that Weston's alleged promise that Plaintiff would be hired to do mileage runs is merely a representation concerning future action and therefore not the type of misrepresentation required to sustain a claim for fraudulent inducement. Second, Defendants argue that any reliance on Weston's promise would have been unreasonable as a matter of law because Plaintiff was an at-will employee.[4] Both arguments fail.

### A. Misrepresentation

The quintessential fraudulent misrepresentation is a false statement about a present fact rather than a promissory statement about what is to be done in the future. *See Sabo v. Delman*, 3 N.Y.2d 155, 160 (1957) (citing *Adams v. Clark*, 239 N.Y. 403, 410 (1925)). However, it is well-established that a promise may constitute an actionable misrepresentation under New York law if it is "made with a preconceived and undisclosed intention of not performing it." *Id.*; *Deerfield Commc'ns Corp. v. Chesebrough-Ponds, Inc.*, 68 N.Y.2d 954, 956 (1986); *Stewart v. Jackson &*

---

[4] Plaintiff characterizes Defendants' motion as also raising an argument that Plaintiff failed to plead with the particularity required by Fed. R. Civ. P. 9(b). ECF No. 13, at 1-2. But Defendant merely cites Rule 9(b)'s particularity requirement. *Osuji v. Fed. Nat'l Mortg. Ass'n*, No. 16-CV-5018, 2017 WL 3017198, at *4 n.8 (E.D.N.Y. July 17, 2017) ("The Court need not consider arguments raised in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (quoting *Sunseri v. Proctor*, 461 F. Supp. 2d 551, 573 (E.D. Mich. 2006)). Similarly, in its reply brief, Defendant argues for the first time that Plaintiff has not alleged that Weston's alleged representations were false. *Bowles v. New York City Transit Auth.*, No. 03-cv-3073, 2004 WL 548021, at *3 (S.D.N.Y. Mar. 18, 2004) ("The Court need not consider arguments raised for the first time in reply memoranda.").

5

*Nash*, 976 F.2d 86, 89 (2d Cir. 1992); *Braddock*, 871 N.Y.S.2d at 86-89; *Laduzinski v. Alvarez & Marsal Taxand LLC*, 16 N.Y.S.3d 229, 231-32 (1st Dep't 2015).

In *Stewart*, the defendant law firm allegedly recruited plaintiff, an environmental law attorney, by falsely telling her that she would head the firm's environmental law department. *Stewart*, 976 F.2d at 89. Upon arriving at the firm, however, plaintiff was assigned to work primarily on general litigation matters and the firm's environmental case work never materialized. *Id.* at 87. The Second Circuit held that the firm's misrepresentation to plaintiff gave rise to a valid claim of fraudulent inducement because the firm allegedly knew, at the time it made that representation, that it did not intend to fulfill its promise. *Id.* at 89.

In *Braddock*, the defendant David Braddock allegedly told his cousin John that once John raised the capital needed from an investor, John would be appointed to serve as the CFO and land manager of David's oil and gas exploration company and would be issued "founder's shares" giving him an equity interest in the company that was equal to David's. *Braddock*, 871 N.Y.S.2d at 71. The court held that John stated a claim for fraudulent inducement because John alleged that David had no intention of fulfilling his promises at the time they were made. *Id.* at 72-73.

In *Laduzinski*, the plaintiff alleged that the Alvarez companies "knowingly and purposely misrepresented the nature of the work plaintiff would be doing for [Alvarez] by telling him that he would be managing the sizeable workload of the company rather than bringing in business, when in fact [they] intended the opposite." *Laduzinski*, 16 N.Y.S.3d at 231. Like in *Stewart* and *Braddock*, the court in *Laduzinski* held defendants' representations supported a claim for fraudulent inducement. *Id.* at 232.

Here, Plaintiff alleges that Weston falsely told her during her interview that she would be hired for a dedicated mileage run assignment from Buffalo to Ashtabula. ECF No. 1 ¶¶ 14, 198-199. In fact, according to Plaintiff's allegations, Hazmat hired Plaintiff with the intention of

assigning her to less desirable hourly runs—thereby allowing Hazmat to attract and retain *other* drivers, particularly male drivers, by assigning those drivers to the lucrative mileage runs. *Id.* ¶ 200.  This assertion is bolstered by Plaintiff's allegation that she was consistently relegated to dirty, physically demanding, hourly runs during her time at Hazmat; by the way Plaintiff was allegedly subjected to various forms of discrimination on the basis of her age, female gender, and transgender status; and by Truskey's alleged statement that he assigned the desirable runs to men because he did not want them to quit. *See Braddock*, 871 N.Y.S.2d at 73 ("While an inference that the promisor never intended to fulfill his promise should not be based solely upon the assertion that the promise was not, in fact, fulfilled . . ., we must recognize that a present intention not to fulfill a promise is generally inferred from surrounding circumstances, since people do not ordinarily acknowledge that they are lying.").

    Although Weston's representation that Plaintiff would be assigned to the Ashtabula mileage run contains elements of both present fact and future promise, it is actionable because, like in *Stewart*, *Braddock*, and *Laduzinski*, Plaintiff plausibly alleges that Weston and Hazmat had no intention of actually hiring Plaintiff for that assignment.  Further, the representation at issue here is not merely a speculative promise about the future. *Cf. Rehman v. State Univ. of New York at Stony Brook*, 596 F. Supp. 2d 643, 660 (E.D.N.Y. 2009) (finding that "purported assurances that the plaintiff would be fast tracked for promotion and would have ample time to conduct research are non-actionable future promises").  Rather, it is a concrete statement regarding the nature of the job that Plaintiff was interviewing for.  As a result of her reliance on that representation, Plaintiff began suffering financial injury as soon as she received her first paycheck.  Therefore, Defendants' argument is unavailing.

### B. Reasonable Reliance

Under New York law, the principle of at-will employment means that—absent a constitutionally impermissible purpose, a statutory proscription, or an express limitation in the individual employment contract—either the employer or the employee may terminate their employment relationship "for any reason, or for no reason." *Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 58 (2008) (quoting *Murphy v. American Home Prods. Corp.*, 58 N.Y.2d 293, 305 (1983)). Thus, an at-will employee who has been terminated cannot state a fraudulent inducement claim "on the basis of having relied upon the employer's promise not to terminate the contract . . ., or upon any representations of future intentions as to the duration or security of [her] employment." *Laduzinski*, 16 N.Y.S.3d at 232.

At the same time, a person's status as an at-will employee does not mean that reliance on her employer's false representations is always unreasonable under New York law. Where the misrepresentation involves a concrete statement about the present rather than speculation about the future, and where the employee alleges an injury that is separate and distinct from the termination of her employment, that employee may state a valid claim for fraudulent inducement. *Laduzinski*, 16 N.Y.S.3d at 232; *Navaretta v. Grp. Health Inc.*, 595 N.Y.S.2d 839, 840 (3d Dep't 1993); *see also Stewart*, 976 F.2d at 89 (holding that plaintiff, an at-will employee, stated a claim for fraudulent inducement where here alleged injuries "commenced well before her termination and were, in several important respects, unrelated to it"); *Smalley*, 10 N.Y.3d at 58 (finding *Stewart* distinguishable because "plaintiffs alleged no injury separate and distinct from termination of their at-will employment").[5]

---

[5] Some decisions from the Second Department could be interpreted to hold that a person's at-will employment status is a complete bar to all claims of fraudulent inducement. *See Marino v. Oakwood Care Ctr.*, 774 N.Y.S.2d 562, 563 (2d Dep't 2004); *Epifani v. Johnson*, 882 N.Y.S.2d 234 (2d Dep't 2009); *Guido v. Orange Reg'l Med. Ctr.*, 958 N.Y.S.2d 195 (2d Dep't 2013). This Court does not adopt that line of reasoning because it is inconsistent with the majority of New York precedent, arguably inconsistent with the New York Court of Appeals's holding in *Smalley*, and unnecessarily extends the consequences of at-will employment beyond the justifications for that doctrine.

Here, Plaintiff's fraudulent inducement claim does not center around her termination from Hazmat. ECF No. 1 ¶¶ 198-20. Both the alleged misrepresentation (that Plaintiff was being hired for the Ashtabula mileage run assignment) and Plaintiff's alleged injuries (loss of income due to her hourly run assignments) are separate and distinct from her ultimate termination. As explained above, the representation at issue here was a concrete statement about the job Hazmat was hiring Plaintiff to do and was not mere speculation about future expectations. Therefore, like in *Laduzinski*, *Navaretta*, and *Stewart*, Plaintiff states a valid claim for fraudulent inducement under New York law.

## CONCLUSION

For the reasons stated below, Defendants' motion to dismiss (ECF No. 11) is GRANTED IN PART AND DENIED IN PART. The motion is GRANTED with respect to Plaintiff's tenth cause of action for intentional infliction of emotional distress, but DENIED with respect to Plaintiff's eleventh cause of action for fraudulent inducement.

IT IS SO ORDERED.

Dated: July 28, 2017
       Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court